Council we're ready to hear you. Good morning. May it please the court. Good morning. My name is Lauren Oliveros and I am representing the appellant Alfonso Hernandez. I would like to reserve three minutes of time for my rebuttal. We are here because Mr. Hernandez, a strident and persistent community activist for the homeless in Albuquerque, recorded on his cell phone, the camera part of it, an encounter that he believed would be abusive or unlawful between a homeless person and a transit officer. Now the act of recording is not a crime and in fact it serves an important public function of police accountability. Council, we're generally familiar with the public media programs on this matter and I think as a general proposition it's a good thing when recording of events and episodes happen when there's no intrusion into the process itself. And we have had nationwide examples of the good that can come from these type of viewers. Looking at your case, you have gone to trial and my first question to you is these points that you make, particularly the factual points where there's a substantial dispute in the evidence as to who did what, have all of that evidence, except for your one evidentiary objection, has the rest of that evidence been presented or was it presented to the jury? Yes, your honor, all of the evidence that we cited in our briefs was presented to the jury and the citations to the briefs were to trial testimony and the exhibits at trial. I wanted to alert the court that all of the issues were preserved and I have specific citations to the preservations of those issues. The jury obviously did not buy your version of the facts, correct? That's correct, your honor. And Joe, just a second. Famously, the chief judge of our court once asked the question, if the jury didn't buy it, how can you expect us to? I mean, that's not our role. What's your answer to that? The answer is really in the first argument, or the first issue, is that the trial was fundamentally unfair when Judge Gonzales erroneously expanded the discovery sanction to be a through that lens of being labeled as being untruthful by the court. So let's address that. You did not object, did you, to the magistrate? You didn't object at the district court level to that magistrate's ruling? That's correct, your honor. I did not. We did not object. It was private counsel at that time, but the ruling was limited in scope to that there would be cross-examination just on that there wasn't complete answers. And I think that there was a fundamental difference in what was allowed to come out at trial, and that's that there was a finding of untruthfulness. I didn't understand because it was a little glitch in the in the audio for just a moment. You're saying that you did not object to the magistrate's ruling, but do you think that ruling did not authorize the statement that was made to the jury here? That's correct. The ruling first by Judge Yarbrough was that the defendant would be asked about his failure to answer interrogatories, and there would be allowed cross-examination on the failure to answer. That's very different than what came out at trial, which I did object to, and there would have been an objection had the sanction said that there would be a finding of untruthfulness because that is that is an entire different area that that is the sole province of the jury. And this issue is the one that tainted the entire case. At trial, Ms. Martinez asked the client, can I refresh your recollection about whether sanctions were issued against you for failing to give me truthful information? That's very different than Judge Yarbrough's order, which he said that the defendant may question about a failure to answer. Well, wasn't counsel, wasn't he ordered to provide true and complete answers to the interrogatories? And he did not do so, and therefore, why when he was questioned about his failure to do so at trial, why wasn't he simply being questioned about his failure to provide truthful answers to the interrogatories rather than the judge commenting on his credibility somehow? I guess I'm not seeing your distinction. So I think the distinction is it is very different to say, for example, aren't you, you know, everybody is to, as litigants, provide true and complete answers. It's very different to say, isn't it true that the court found that you were untruthful in your answers? And had that been in the sanction, there would have been an objection to that because that is a credibility finding. Now, I couldn't find any any cases exactly on point, but I think that if you look at a Mr. Blodgett in the Blodgett case, and if you look at the Rasmussen case, those are cases where there was comments on credibility, but not credibility findings by the court. And those were analyzed. Even though the comments were allowed, there was far more egregious conduct. For example, Mr. Blodgett in the Oklahoma Federated Gold case, he never answered any discovery. He never submitted any witness list and couldn't present evidence. And yet he was, he was, the judge needed to explain why he wasn't testifying. And so there was a comment about the nature of his testimony. And that was very different in this case. And that was a concern. And in Rasmussen, he misled the court about the foundation of photographs, and the judge comments on that. That's, again, very different. The judge didn't say you were untruthful to the court and lied to the court. That is, pardon me, but the judge didn't say that here either. Did the judge say that? The judge said he didn't provide truthful answers to the interrogatory. Isn't that a fact? That what I what the judge said in his testimony, I'm sorry, at the bench conference was that the fact that he was the fact that Mr. Hernandez was found to be untrue by Judge Yarbrough was a part of the sanction, which was going to be allowed to be presented to the jury. And that was not a part of the sanction, the same. Although the judge did feel that Mr. Hernandez was not truthful, he did not put it in the in the sanction that would be told to the jury. And that's very different that when we're told something will be told to the jury, that it's a case and it is a credibility finding. And that's not what the sanction was supposed to be. And it was highly prejudiced to Mr. Hernandez, which I did object at trial and again at closings because of the way that it was the way that it was offered. And that was preserved at Appellate Appendix Volume 5, 1234, 1235 to 1236 and 1385 to 86. I'm if I've answered your questions, um, that credibility finding was magnified by Judge Gonzalez's preclusion of a witness that would have established and bolstered Mr. Hernandez credibility. And it would have that witness was excluded for three reasons, and you only object to the first of those three reasons. So have you waived that argument? The my understanding from the court. I don't believe so. You're on your honor, and I believe I did preserve the objections in Appellate Appendix 10 58 to 60 and 10 60 to 64. There was an extensive offer of proof at 10 65. Um, that if I look at the appendix, if we look at the appendix at page 65, uh, we will find that you objected to all three grounds by the district court for refusing that testimony. Did I? Yes, there was extensive argument on it, Your Honor. And I believe that my question is, are you representing to the court? Because we will look and we'll find out. But I just want to know about your helpfulness to us. Now, are you representing that you specifically said that we object to all three of the magistrate of the rulings to exclude that that not the ministry, but the district judge to the exclusion of that witness? I did not use the words I object, but I did. Um, so that is not in the record. But there was an extensive objections and offers of proof about the both the relevance, the fact that it was not a character witness and the fact that the witnesses, um, there was noticed to the defense and that that the defense found that the witnesses were irrelevant on that there was. It was harmless because and this is that appellate appendix 12 87. The defense admitted that the information about the witnesses was provided under Rule 26, and she didn't believe they were relevant. But I believe that my objections and my offers of proof did incorporate all of the all of the objections that all of the reasons why the court excluded the witness the witnesses. And again, I have, um, there wasn't in the brief the citation, but I would add the citations of 10 60 to 10 64 and 10 65, where there was an offer of proof, and the court found that it was a complete offer of proof to give notice of both him and the appellate court that the issue was preserved. Thank you, Counselor. Do you want to reserve your time? Yes, I did. I did want to reserve three minutes. I would like to say I would like to just, um, indicate where we have preserved the issue on the directed verdict and the seizure. And that was at a pelleted penance 12 89, uh, appellate appendix 7 72 and appellate appendix 84 85. And the preservation for the issue on the waiver of the tort claim was preserved at appellate appendix 1 99 to 18 to 2 23 45. Um, and we would like that issue because it's, um, solely on state law. I think the remedy on that issue, uh, having established facts at trial that there should have been a waiver of the twerk claims act that, um, that should be certified to the New Mexico State Supreme Court. And I'll reserve my remaining time. Thank you. Mhm. Right. Council were ready to hear from you as well. Thank you. May it please the court. As this court's noted, a jury trial has always been and still is generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases. The most important function served by a jury is bringing its accumulated experience to bear upon witnesses testifying before it in order to distinguish truth from falsity. And this court has specifically stated. We do not second guess the jury's credibility determinations, nor do we reassess the jury's conclusions about the weight of the evidence presented. So as this court properly noted, the incident issue occurred August 30th of 2012, and it was tried before a jury in May of 2019, and it resulted in a defense verdict on behalf of defendant Fitzgerald. Now, the plaintiff's main argument is that for reversal under the sufficiency of the evidence is that the jury determined that the plaintiff was not seized, and thus the plaintiff is entitled to a new trial. In fact, if the court reviews the jury, a very special verdict, the jury did not determine that the plaintiff was not seized. The jury determined that the plaintiff was not seized by my client, Mr Fitzgerald. And so that's that's a big difference between what's being argued in the brief and the facts adduced by the jury. Uh, does that matter if an officer calls upon a fellow officer to do an act? Isn't the initial officer making that request equally liable for the conduct of the second that has been requested by him? It can be your honor. Under 1983, an officer can only be liable for the acts that they commit. And so the evidence adduced at trial was that, uh, Akeem Padrel, who is the other off the other transit officer, 1 1 1 2nd. So if if Officer A says to Officer B, uh, this guy is, uh, bothering me, please shoot him. And the guy shoots him. Uh, you're saying that Officer A is, uh, under the case law free from fault. What's what's the case that tells us that the case that tells us that he's free from fault your honor that you can be held liable if both are acting in concert. But in this case, Akeem Padrel observed the plaintiff's conduct and ran. Tell us the case first, and then let's argue the case that tells us, uh, that supports your answer to my question on a B. Well, your honor, I think if ball tells us that you can only be liable for your own conduct, um, and then, uh, you can occasionally be liable if you fail to intervene. There's some case law in the 10th Circuit. But in this case, there's no evidence and no evidence was adduced at trial that Mr Fitzgerald asked Mr Padrel for assistance. Instead, Mr Padrel saw the plaintiff's behavior and conduct, and that's what caused him to run across the street, pull out his mace and handcuff the plaintiff. And that's I'll tell you what is raising a little bit of skepticism on my part. It's that, uh, that and again, I refer to to the popular media on this, not into any particular, uh, factual scenario in this case, necessarily. It is that almost always the officers have an excuse for terminating third party videoing of these types of episodes. And, uh, the consequences to chill the either First Amendment rights or other rights that these third party do gooders, some would call him, uh, engage in in the process of videoing what they consider to be police misconduct. Uh, well, what? What is the should our should the courts just readily exceed to the officer's version or do we have broader obligations? Your Honor. In this case, the plaintiff approached the bus stop with both his cell phone on and a concealed audio recorder in his pocket. What's wrong with that? Nothing illegal about that. Nothing illegal about that, Your Honor, except it is pretty much established that he was attempting to set up these officers. He previously sued the city of Albuquerque in the past for similar claims for similar injuries in the same locations, and this was just part part three of that. What evidence do you have that having a cell phone in your pocket playing to record something is the equivalent of a setup? I mean, that's the that's the leap that I don't understand. It was. It's just as consistent with not setting anything up, but just trying to record what is going to happen. Well, the evidence is, Your Honor, that despite not making any cell phone calls from the scene, the plaintiff managed to show up to the to the location. I guess magically, the plaintiff admitted at trial that perhaps he had called him prior to his encounter with my client, and he showed up at the scene immediately following. He can be seen in the police officer's lapel video, and he stays surreptitiously around watching the action, then takes names. And after this encounter, the plaintiff can be heard on his audio recording meeting up with other individuals, watching the video that he captured, congratulating him on the great video he captured, and then talking about how they've they found lawyers who want to take these kind of cases. So the plaintiff's own evidence established the setup. Okay, that evidence is helpful. Thank you. Could I get you to respond a little bit more on this question on the, it's on the 50 motion. If we disagree with you that the jury did not have facts before them that would support the jury's decision that there was no seizure by the defendant here, what does that mean for your argument? Does that mean, because then the jury should have, if that was incorrect, the jury should have found there was a seizure, they should have been able to go on and make further consideration regarding? Well, if the court looks at volume 3 of the appendix at page 769, and that jury verdict, the jury also determined that Fitzgerald's seizure of plaintiff was not unreasonable. So the first question they answered. Okay, I'm sorry, go ahead. The first question they answered was that he was not seized by Fitzgerald, but then they went on and answered a second question and determined that Mr. Fitzgerald's seizure of plaintiff was not unreasonable, and the evidence adduced at trial. But they just found there was no seizure. Did it say even if there was a seizure? It doesn't say that, Your Honor, but what we know from this court's precedent is that if there are special verdict answers which are inconsistent, that this court then construes them in the light surrounding, in light of the surrounding circumstances and in connection with the pleadings, instructions, and submitted issues. And so the defendant submits that, you know, the evidence adduced at trial from multiple witnesses, including my client, was that the plaintiff stood and tried to attack him. And that's what caused Mr. Padrell to run across the street, pull out his mace, and put handcuffs on the plaintiff. That's also corroborated by a bus driver who had driven up to the encounter, and the bus was full of riders, and they were all present and observed the action. So nobody came... Did you make this argument in your response brief on that issue? I just saw some general discussion of Rule 50, and I didn't see any argument like what you're making right now. Well, Your Honor... About a potentially inconsistent verdict and how we should read it. I did not make that argument, Your Honor. Okay. That is contained in the special verdict, and it is consistent with this court's precedent. I wanted to address briefly the the plaintiff's arguments about the court sanctions. And the court is correct that the plaintiff did not object to the magistrate's recommendations, and those recommendations stated the following. The nature of the information plaintiff claims he simply forgot, and the lack of diligent plaintiff has displayed throughout the course of this litigation, make it difficult to accept the plaintiff's representation that his memory simply failed. So that was the finding by the magistrate court. And then, if this court were to look at the order entered by the district court concerning the plaintiff's motion in limine, concerning this sanction, the district court stated, and this is in the record in the appendix, volume 3, page 760, with respect to the scope of the court's sanction outlined in documents 110 and 111, defendant may question plaintiff regarding his failure to answer multiple interrogatories more than once, even when plaintiff was ordered by this court to provide true and complete answers. And that is, that is all that that occurred at the trial. It was consistent. No, the question was a what you just read is a justification by the court for a sanction. It isn't an explanation of what the sanction itself will be. This proposed sanction only talks about failure to give complete answers, and this word truthfully, although it was proposed as a justification for the sanction, was not, I don't think in the dialogue you've said it, ever injected. But it might have been injected in a different place, and this is my question to you. In the motion in limine, addressing the sanctions, I believe that Hernandez conceded, quote, defendant Fitzgerald may question plaintiff regarding whether he answered interrogatory 16 and 17 truthfully, and why he failed to answer them truthfully. Is that right, and if so, isn't that a concession by the defendant that truthfulness can be presented to the I think truthfulness was contained in both the magistrate's order, the district court's order, and the plaintiff's motion. I just agree with your points one and two, but it does seem to me it was included in the plaintiff's own motion in limine's statement. And so, your honor, that your honors, based on the sufficiency of the evidence, the evidence adduced at trial was overwhelmingly in favor of the defendant. The plaintiff himself produced photographs that he'd allegedly taken of his injuries in this case. I did not object to a single one of those photographs. The plaintiff claimed that the defendant, my client, and Mr. Padrel, he said, two giant black men jumped on him with all their weight, and he claimed that my client strangled him. The evidence that he had were some pictures of his neck. I asked him how I could tell the difference between the damages from the first case he brought against the city of Albuquerque, or in this case, he said, oh, well, your client injured the back of my neck. This photograph is a picture of the back of my neck. And then as we looked closer at his own evidence, he was able to see the photograph was actually of the front of his neck. And so, he was unable to tell the difference between the damages in this case or any photographs that he took himself consistent with the injuries he described. Well, I'm not so quick. I mean, isn't the very, assuming his version of the facts are correct, that he was concerned about police, potential police misconduct, and he wanted to video the event. And he was precluded from doing that. Isn't that adequate in terms of proof of damages? Isn't the fact that he was precluded from public, from videoing a public event, in and of itself, adequate damages to sustain the case? Well, Your Honor, the evidence adduced at trial was not that he was precluded from videotaping. He stood up. Well, they beat him up. How can you possibly video somebody if somebody's beating you up? The evidence adduced at trial, Your Honor, and it's evident in the video, is that the video by the way slapped handcuffs on him. The video shows the plaintiff standing up. You can see image from a certain height and then image from another height. And so, hands were only laid on him when he threatened to physically assault my client. The evidence was that he raised his arm and tried to punch my client, and my client blocked it. And that's when... So, your theory of the case is that this guy that feeds the homeless people went up to just beat up these officers? No, Your Honor. That that was his motive and not videoing potential police misconduct, or what he considered to be police. Put that in quotes. Your Honor, the evidence before the court is that the jury didn't believe the plaintiff's version of the fact. Yeah. Isn't that your best argument? My best... No, Your Honor. We never claimed that he came to physically start an altercation, but you could tell by his tone of voice that he had no respect. He had disdain for my client and Mr. Padrel throughout, and he also had disdain for the law enforcement who showed up after the fact. He never disclosed any of his injuries. He never disclosed this altercation. He never claimed that he was unable to video. This whole series of events was never disclosed to anybody at the scene. It was only disclosed later through this litigation, Your Honor. And so that is another reason why the jury chose not to believe the plaintiff's version of events, because they simply weren't corroborated at the scene. In fact, the law enforcement officer who arrived at the scene testified that the plaintiff had no marks, no bruises, and he's a trained observer. He didn't disclose that he'd been injured. He didn't disclose that he'd been battered. He didn't disclose that he'd been assaulted. None of that information was stood up and went up to Mr Padrel and demanded his name and I. D. So that he could make a record of that for his future use in his litigation. So the plaintiff's allegations were not believed at any time. Thank you very much. Thank you. Unless my colleagues have further questions to Jeeva Lawrence. No, no. All right, then we'll you have some reserved time. Council will hear from you then. Thank you. I would like to first address the on the issue of the expanded scope of the sanction in Judge Gonzalez's order on the motion and lemony that starts at Appellate Appendix 7 60. I think it's important to point out that the motion was to make sure that there wasn't evidence of criminal acts that would have been not allowed into evidence under Rule 403 or 404 B and to look at only the scope of the sanction with respect to that evidence. And in it, in on Appellate Appendix 7 61, the court says, with respect to the court sanction outlined in documents 1 10 and 1 11, it says that the defendant may question the plaintiff regarding his failure to answer multiple interrogatories. And that's why I think it's important to show that distinction more than once, even when he was ordered to provide true and complete answers. But the that the part about what was gonna be allowed in front of the jury was the failure to answer most multiple interrogatories. Then at trial, when we are again discussing the scope of all of the court's orders, and this is that Appellate Appendix 10 91. The judge talks about this again. What? Because it was a paramount importance to the plaintiff to make sure that we knew what was allowed and what wasn't allowed. And the judge said that they would be allowed again to talk about the failure to provide complete answers. And then quick, quick. How do you respond to the fact that in your motion in limine, you conceded that the defendant Fitzgerald may question the plaintiff regarding whether he answered 16 17 truthfully. I don't believe that that was conceded in the motion, although the sanction as stated, it was very important that the same the sanction was not objected to. And that was that he could be questioned about his failure to answer. I understand that argument. But there is this separate argument that you have affirmatively that he may be questioned. He may be challenged whether he answered quite truthfully. I don't believe that we can. We conceded that issue, and we certainly objected to it at trial. And we were trying with the motions in limiting to work with the court on what was going to become before the jury. And we did not have noticed that there was gonna be a judicial finding of untruthfulness before the different when you say the court found you were untruthful. Okay, I appreciate that argument. That's helpful. Thank you. Thank you. Your time is up, and we appreciate the arguments this morning. The case is submitted. Counselor excused. Mr. Will you call the next case, please? Thank you, Judge Council for Hernandez versus Fitzgerald. If you would now, please